# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO RENTERIA,<br><br>                      Petitioner,<br>  vs.<br><br>SCOTT M. KERNAN, Warden, and BILL LOCKYER, Attorney General of the State of California,<br><br>                      Respondents.<br>_____<br>IVAN VASQUEZ,<br>                      Petitioner,<br>  vs.<br><br>SCOTT M. KERNAN, Warden, and BILL LOCKYER, Attorney General of the State of California,<br><br>                      Respondents. | CASE NOS. 05cv2266 DMS (BLM)<br>                  05cv2267 DMS (BLM)<br><br>**ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; AND (2) DISMISSING COMPLAINT WITH PREJUDICE** |

      Petitioners Alberto Renteria and Ivan Vasquez are state prisoners serving sentences of 19 years and 17 years, respectively, in the California Department of Corrections. Tried jointly, Petitioners were each found guilty of two counts of assault with a deadly weapon in violation of California Penal Code section 245, subdivision (a)(1). On December 13, 2005, Petitioners filed separate but similar Petitions

for writ of habeas corpus under 28 U.S.C. § 2254 against Respondents Kernan and Lockyer.[1] Petitioners claim they were denied due process under the Sixth and Fourteenth Amendments due to jury misconduct. The Magistrate Judge issued a thorough Report and Recommendation ("R&R"), concluding that neither Petitioner was entitled to habeas relief. Petitioners filed joint objections to the R&R, which the Court addresses below.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts in its entirety the statement of facts set forth in the R&R, and summarizes below only those facts that are material to the issues addressed in this Order.

### A.     The State Court's Denial of Petitioners' Motions for New Trial

Prior to sentencing, defense counsel and the state court received a letter from Juror No. 2, who wrote: "[h]opefully, I am not too late to say how the deliberations went." She then explained that based on the evidence presented she believed petitioners "were there, but, they didn't stab anyone." She also stated she did not fully understand the law and "didn't realize the law could be challenged." Lodgment 1 at 355, 365.

Petitioners thereafter filed a petition for release of juror names and a motion for a new trial. Lodgment 1 at 349-54, 367-75; Lodgment 10 at 22. In support, Petitioners submitted a declaration from Juror No. 2, as well as from Juror No. 1.[2] *Id.* In addition to the comments in her letter above,

---

[1] Although Petitioners initially named both Kernan and Lockyer as Respondents, the R&R recommended that Lockyer be dismissed, (R&R at 2, n. 2), and Petitioners agree. Objections at 2. Accordingly, the Court dismisses Respondent Lockyer from the Petitions.

[2] The juror declarations are set forth in full as they are the focus of the Petitions and Petitioners' objections to the R&R. Juror No. 2 declared, under the penalty of perjury, as follows:

> 1. I was juror No. 2 in the trial of Ivan Vasquez and Alberto Renteria.
> 2. I did not believe there was any evidence that either defendant committed the act of stabbing anyone in the park.
> 3. The Presiding Juror, Number 5, was a control freak. He wanted to read the instructions to us. He would not give the jury instructions to us to read. He said that they were there and they could have stopped the incident and did not therefore they were guilty. He even controlled the buttons for the bailiff.
> 4. The Presiding Juror was rude to Juror Number 7. Juror Number 7 finally put her foot down and got the instructions. Juror Number 7 was the Indian woman in the front row.
> 5. There seemed to be an overall attitude that because they were in a gang they were guilty.

Juror No. 2 stated in her declaration that the foreperson was a "control freak." Lodgment 1 at 143-44. "He wanted to read the instructions to us. He would not give the jury instructions to us to read. He said that they [petitioners] were there and they could have stopped the incident and did not therefore they were guilty." *Id.* She also stated the foreperson was "rude" to Juror No. 7, but that "Juror Number 7 finally put her foot down and got the instructions." *Id.*

Juror No. 1 similarly declared: "During the deliberations the foreman kept control of the jury instructions and read them to us. He read the Aiding and Abetting instruction to us. He said that if they were at the park and did not try to stop the attack, they were guilty. He finally allowed Juror Number 7 to read the instructions." *Id.* at 146-64.

The trial court held four hearings, on November 26, 2002, December 20, 2002, January 10,

---

> 6. The trial went long and the Jurors were in a hurry. There was some pressure to reach a verdict. We called for a readback and we cancelled it because it would take too much time.
> 7. We should not have settled any of it. I feel they are not guilty and feel I should have stood my ground. I felt like we had done the wrong thing immediately. I stayed with Juror Number 1 and spoke to some people from Mr. Cox's office and told them about the lack of evidence at that time.
> 8. I was convinced to find them guilty even though there was no evidence they had done anything because they were there and did not stop it. This is what Juror Number 5 declared the law to be.

Lodgment 1 at 143-44. Juror No. 1 declared, under penalty of perjury, as follows:

> 1. I was Juror Number 1 in the trial of Vasquez and Renteria, SCD 166690.
> 2. I felt that there was no credible evidence that either of these defendants were guilty of stabbing [Fernando G., known as] Giant or Fernandez (sic).
> 3. I believe they were there, however, in all the testimonies that were presented, no one could identify Vasquez nor Renteria as one of the guys who stabbed Giant. In my opinion the Fernandez (sic) brothers were lying on the stand so I could not figure out who actually took a stab at him (one of the Fernandez (sic) brothers) so I ignored there (sic) testimonies.
> 4. When I heard [prosecutor] Mr. Runyon's closing argument about aiding and abetting and that if these men were there they were guilty according to the law.
> 5. I believed Renteria was at the park because of the girl with the baby carriage. I believe Vasquez was at the park because of the witness across.
> 6. During the deliberations the foreman kept control of the jury instructions and read them to us. He read the Aiding and Abetting instruction to us. He said that if they were at the park and did not try to stop the attack, they were guilty. He finally allowed Juror Number 7 to read the instructions.
> 7. After the trial two other Jurors and I returned to the jury lobby and spoke to another juror that had many trials under her belt. We were upset by what had just happened and explained that we did not think they had done anything but the law said we had to convict. She said that the reason they need juries was in cases like this. That is if it did not seem right the jury could acquit. Since then I have been upset with what we did.

*Id.* at 146-64; Court of Appeal Decision at 7, n.4.

2003 and February 21, 2003, in response to Petitioners' requests for juror information. Lodgment 10 at 22-108. Based on the showing made at the second hearing, the court tentatively granted Petitioners' motions to access juror information. *Id.* at 92. As a result, the trial court sent letters to the remaining jurors regarding Petitioners' requests for disclosure of their contact information and advising them of the hearing date. *Id*. at 63-6. All ten jurors declined to disclose their contact information. *Id.* at 68.

At the final hearing, the state court denied both the motion to disclose juror information and the motion for new trial. Lodgment 10, Vol. 7 at 3, 20. With respect to the first motion, the court indicated it acted prematurely when it solicited juror feedback before determining whether Petitioners had made a *prima facie* showing of good cause. *Id.* 3. The court then concluded that Petitioners had not made that showing. *Id.* With respect to the motion for new trial, the court found Petitioners had not provided "admissible evidence" of jury misconduct. *Id.* at 10. The court concluded that no error of constitutional magnitude occurred and that neither "defendant [was denied] his due process right to a fair trial and a reliable determination of guilt by the jury." *Id.*

### B. The Decision of the California Court of Appeal

On appeal, Petitioners argued the trial court erred in denying their motions for new trial. Petitioner Vasquez argued the jurors' declarations should have been admitted because "they described overt acts of misconduct rather than the reasoning process by which the foreman reached his conclusion." Appellate Decision at 8. Petitioner Renteria joined in this argument and added that the misconduct "undermined the structural integrity of the trial" in violation of their due process rights. *Id.*

The Court of Appeal affirmed the trial court's finding that the juror declarations were inadmissible under California Evidence Code section 1150.[3] The court reasoned that the declarations impermissibly reflected the jurors' deliberative process, and did not contain admissible evidence. The court held:

---

[3] California Evidence Code § 1150, subdivision (a), provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

> [T]here is no indication that the foreman's misunderstanding of the law was based upon his own experience or expertise. Nor was there any evidence that his misunderstanding was obtained from an source extraneous to the judicial process. Instead, the declarations . . . demonstrated merely that at one point in the deliberations the foreman stated the law as he misunderstood it based upon the instructions given by the trial court. It is reasonable to assume that this misunderstanding was corrected by reference to the copy of written instructions present in the jury room.

Appellate Decision at 11. The state court, therefore, concluded Petitioners failed to provide admissible evidence establishing jury misconduct. *Id.*

### C. The R&R

Petitioners attack the state Court of Appeal decision on two grounds, one legal and one factual. First, Petitioners contend the state court misapplied California law. Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus ("Memorandum") at 7-9. According to Petitioners, the juror declarations identify two problems: (1) the foreperson's refusal to share the written jury instructions; and (2) the foreperson's erroneous statement that if Petitioners were at the park and did not try to stop the crime, they were guilty. Petitioners claim the appellate court erred in concluding that evidence of the foreperson's refusal to share the jury instructions was inadmissible, because that conduct (the refusal to share jury instructions) is an "overt act" that is "expressly allowed into evidence by section 1150." *Id.* at 8. Second, Petitioners claim the appellate court made an incorrect factual determination with respect to the foreperson's misstatement of law. According to Petitioners, the appellate court erred in concluding that the transgression "was corrected by reference to the copy of written instructions present in the jury room." *Id.*

With respect to the foreperson's refusal to share the jury instructions with fellow jurors, the R&R identifies *Tanner v. United States*, 483 U.S. 107 (1987), as controlling Supreme Court authority and concludes that the decision of the state Court of Appeal conforms with *Tanner*. The R&R states: "Like section 1150, [Federal Rule of Evidence] 606(b) renders affidavits or declarations suggesting jury misconduct inadmissible if they do not demonstrate on their face that extraneous information affected jury deliberations." R&R at 15 (citing *Tanner* and its discussion of Rule 606(b)). Because the declarations submitted by Petitioners did not demonstrate on their face that extraneous information infected the deliberative process, the R&R concluded that the state court decision is not contrary to

clearly established federal law as determined by the Supreme Court.

With respect to the claim that the state appellate decision rests on an unreasonable determination of the facts, the R&R concludes the record "belies Petitioners' claims." R&R at 24. According to the R&R, "substantial evidence in the record" shows it was reasonable for the state court to conclude that the foreperson's misunderstanding of the law was "corrected by reference to the copy of written instructions present in the jury room." *Id.* at 25. The R&R, therefore, recommends that this Court deny the Petitions.

## II.

## STANDARD OF REVIEW

Because Petitioners filed the current petitions after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), the Court's review is limited by the provisions set forth in 28 U.S.C. § 2254(d). Under this section, a habeas petitioner is not entitled to relief unless he can demonstrate that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

According to the Supreme Court, section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," and "demands that state court decisions be given the benefit of the doubt." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 (1997); *Woodford v. Visciotti*, 537 U.S. 19 (2002)). The Court reemphasized the deferential standard of review imposed by AEDPA when it reversed the Ninth Circuit's grant of a habeas petition for "fail[ing] to give appropriate deference to the state court's decision." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Court clarified the terms "contrary to" and "unreasonable application of" under section 2254(d)(1). A state court's decision is "contrary to" clearly established federal law if it fails to apply the correct controlling authority, or if it applies the

1 controlling authority to a case involving facts materially indistinguishable from those in a controlling
2 case, but nonetheless reaches a different result. *Id.* at 405. On the other hand,

> a state court's decision involves an "unreasonable application of" federal law if it either (1) correctly identifies the correct governing legal rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.

*Id.* at 407. The Court has repeatedly emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Clark*, 331 F.3d at 1067 (citing *Williams*, 529 U.S. at 410). *See also Woodford*, 537 U.S. at 24 (a federal court may not "substitute its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); *Penry v. Johnson*, 532 U.S. 782, 793 (2001) ("Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.") Thus, a "federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the application must be objectively unreasonable. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004).

In addition, when ruling on a habeas petition under AEDPA, the key inquiry is not whether the state court "erred." In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court did "not reach the question whether the state court erred" in deciding whether habeas relief should be granted, but rather focused "solely on whether § 2254(d) forecloses habeas relief." *Id.* at 71. In doing so, the Court overruled the Ninth Circuit's previous requirement that federal habeas courts review the state decision *de novo* before applying the AEDPA standard of review, and expressly held that the only question that matters under section 2254(d)(1) is whether the state court decision is contrary to, or involved an unreasonable application of, clearly established federal law. *Id.*

To obtain habeas relief under section 1154(d)(2), a petitioner must demonstrate that the factual findings upon which the state court's adjudication rests is objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The court will presume that the state court's factual findings are correct, and Petitioners may overcome that presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1   ///

## III.

## DISCUSSION

Petitioners object to the R&R on two grounds: (1) the R&R "ignore[s]" the foreperson's conduct of refusing to share the written jury instructions and instead focuses solely on his misstatement of the law (Objections at 4); and (2) it errs in concluding that substantial evidence supports the state court's factual determination. *Id.* at 4-6. For the following reasons, this Court adopts the R&R's conclusions on both grounds.

### A.     The State Court Decision is Not Contrary to Clearly Established Federal Law

Petitioners contend that both the state appellate court and the Magistrate Judge "erroneously concentrate" on the foreperson's misstatement of the law and "ignore" his refusal to provide the written jury instructions to other jurors. Objections at 4. Petitioners claim the latter misconduct is not "protected by section 1150 [] which shields only the mental processes of the jurors." *Id.*

Contrary to Petitioners' argument, the R&R explicitly considers the foreperson's failure to share the written jury instructions. The R&R points out Petitioners argued that the foreperson's overt act was admissible because it is not misconduct relating to the jury's deliberative process, R&R at 19, and concludes the argument lacks merit: "Federal courts have held that even evidence of a juror's express decision to disregard jury instructions was not properly determined to be inadmissible because 'it [did] not concern facts bearing on extraneous or outside influences on the deliberation.'" *Id.* (citations omitted). The R&R reasons that, similarly, here, evidence of the foreperson's act of withholding the jury instructions is inadmissible. *Id.*

Federal law as determined by the Supreme Court supports the R&R's conclusion. In *Tanner*, 483 U.S. 107, the Court held that Rule 606(b) prohibits the admission of evidence of juror alcohol and drug use to impeach a jury verdict. Rule 606(b) codified the common-law rule prohibiting the use of juror testimony to impeach a jury verdict, except when an "extraneous influence" is alleged.[4] *Id.* at

---

[4] Rule 606(b) provides, in relevant part: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous

117. The petitioner in *Tanner* argued that substance abuse by a juror constituted an "extraneous influence," about which jurors may testify under Rule 606(b). *Id.,* at 121. The Court disagreed, holding that such evidence could not be considered an improper outside influence. It reasoned: "[h]owever severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more than an 'outside influence' than a virus, poorly prepared food, or a lack of sleep." *Id.* at 122.

The Court in *Tanner* held that Congress intended Rule 606(b) to have an expansive reach, prohibiting not only inquiries into the jurors' deliberative process, but also inquiries into any irregularity during deliberation, except inquiries into "extraneous influence." The Court noted that two versions of the rule were introduced: one by the Senate, and one by the House. The Senate bill, which was subsequently adopted by Congress, was more far-reaching than the House bill. It sought to preclude the use of juror testimony about "*any matter or statement* occurring during the course of the jury's deliberations." *Id.* at 125 (citations omitted) (emphasis added). The House bill, on the other hand, merely prohibited the "impeachment of verdicts by inquiry into the *jurors' mental processes*." *Id.* at 124 (emphasis added). The Court reasoned that because the Senate bill was adopted as law, it demonstrates with "uncommon clarity" that Congress specifically rejected a version of Rule 606(b) that "would have allowed jurors to testify on juror conduct during deliberations, including juror intoxication." *Tanner,* 483 U.S. at 125.

*Tanner* makes clear that the type of conduct alleged here (the foreperson's refusal to share written jury instructions) is inadmissible under Rule 606(b). Simply put, the declarations in question are inadmissible because they do not contain any evidence of prejudicial extraneous or outside influences improperly brought to the attention of any juror. Petitioners do not argue, and this Court concludes, that the declarations do not contain any evidence of such extraneous or outside influences.

Accordingly, Petitioners' objections to the R&R on this ground are overruled. The decision by the state Court of Appeal to exclude the declarations is not contrary to clearly established federal law.

---

prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. . . ."

**B.     The State Court's Determination of Facts is Not Objectively Unreasonable**

Petitioners contend they are entitled to habeas relief because the state appellate decision relied on an unreasonable factual determination. Petitioners' argument focuses on the following language from the state decision: "[T]he declarations offered in support of the motion for new trial demonstrated merely that at one point in the deliberations the foreperson stated the law as he misunderstood it based upon the instructions given by the trial court. It is reasonable to assume that this misunderstanding was corrected by reference to the copy of written instructions present in the jury room." Appellate Decision at 11. Petitioners take issue with the second sentence. They contend it is unreasonable to assume that the foreperson's misstatement of the law was corrected by reference to the copy of the written jury instructions.

Petitioners' argument lacks merit for two reasons. To prevail, Petitioners must demonstrate that the factual findings upon which the state court's adjudication rests is objectively unreasonable. *Cockrell*, 537 U.S. at 340. Here, it cannot be said that the state court's adjudication *rests* on the factual determination at issue. The appellate decision, viewed in its entirety, does not rely on a factual determination that the foreperson's misapprehension of law was corrected. Rather, that "factual determination" by the court was merely an assumption, an aside observation, the validity of which does not affect the state court's holding that the juror declarations were inadmissible under section 1150.

Second, even assuming the state court decision rests on that assumed fact, "substantial evidence in the record supports the reasonableness of the appellate court's assumption." R&R at 25. A state court's factual determinations are presumed correct unless the petitioner rebuts such factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The R&R concludes Petitioners have failed to carry their burden, and this Court agrees. The state court's use of the phrase "by reference" reasonably could be construed to mean the foreperson's misunderstanding of law was cleared up by his reading of the correct instructions to the jury. *Id.* The R&R correctly notes, among other things: (1) both juror declarations suggest that the foreperson read the jury instructions in question, as written, to the jurors, then followed it with his own erroneous interpretation; (2) both the trial court and defense counsel adopted this interpretation of the evidence; and (3) the foreperson

allowed Juror No. 7 to review the written instructions. R&R at 26. On this record, it cannot be said the state court's assumption of fact – that the foreperson's misapprehension of law was later cleared up – is objectively unreasonable.

## IV.
## CONCLUSION

Petitioners have not demonstrated that the state decision rests on an objectively unreasonable determination of facts or that it is contrary to clearly established federal law. Accordingly, the Court adopts the R&R in its entirely and denies the Petitions.

**IT IS SO ORDERED.**

DATED: April 24, 2007

_____
HON. DANA M. SABRAW
United States District Judge

cc: all parties
     Judge Major